## CHESBROUGH *v.* WOODWORTH.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH
CIRCUIT.

No. 179.   Argued April 19, 20, 1917.—Decided May 21, 1917.

An action under Rev. Stats., § 5239, against a director of a national
    bank for damages sustained by an individual in consequence of
    violations of the National Bank Act, necessarily involves a federal
    question.

The court finds no reversible error in the views of the evidence or legal
   conclusions reached by the Circuit Court of Appeals in sustaining a
   judgment recovered under Rev. Stats., § 5239.
221 Fed. Rep. 912, affirmed.

THE case is stated in the opinion.

*Mr. Thomas A. E. Weadock* for plaintiff in error.

*Mr. Edward S. Clark,* with whom *Mr. John C. Weadock*
was on the brief, for defendant in error.

MR. JUSTICE MCKENNA delivered the opinion of the
court.

Action in ten counts charging plaintiff in error and one
Joseph W. McGraw with violating the National Bank
Act and alleging damages resulting to defendant in error
therefrom.

In description of the parties we shall designate them
respectively as plaintiff and defendants.

In all the counts defendant Chesbrough and McGraw
are alleged to have been at certain dates directors of the
Old Second National Bank, a national banking corpora-
tion organized and doing business under the National
Bank Act of 1864 and the amendments thereto and having
its office in the City of Bay City, Michigan.

The following violations of the act are charged: (1)
Signing, attesting and permitting and assenting to the
publication of a report of the conditions of the bank re-
quired to be made by § 5211 of such act, which report was
false. (2, 3, 4, 5) The Comptroller of the Currency having
made a requisition upon the bank for a report of the re-
sources and liabilities of the bank upon a day specified
as required by the act, the defendants permitted and
assented to a violation of the act by signing, attesting and
permitting and assenting to the publication of a false

report of the resources and liabilities of the bank and its condition at the close of business of such day. (6, 7, 8) Violation of the act in that defendants and each of them permitted and assented to the declaration of the semi-annual dividend, being payable December 1, 1902, knowing that it would necessarily be paid out of the capital stock of the bank and not out of net profits and knowing that losses had theretofore been sustained equal to or exceeding the undivided profits then on hand, and that the sums so declared as dividends exceeded the profits then on hand, after deducting therefrom losses and bad debts. (9) Defendants knowingly violated and permitted and assented to the violation of the act (§ 5200) in that they knowingly participated in, permitted and assented to the creation of certain liabilities to the bank, and knowingly permitted and assented to the continuance of the liabilities and the carrying of the same among the loans and discounts of the bank after defendants and each of them had knowledge of the nature and character of the liabilities and that they had been created and were being carried in violation of the act. The liabilities are set out. (10) Violations of the act (§§ 5199, 5200, 5204, 5211, 5239), being portions of a general design and conspiracy on the part of the defendants to deceive the public, including plaintiff, for the purpose of giving the stock of the bank a fictitious market value and enabling each of the defendants and his relatives and friends to dispose of certain shares of the stock then and there held by them at a price exceeding the value of the stock.

In each count damage is alleged to have been caused to plaintiff, he having purchased stock upon the faith of the action of defendants. The total amount of damage is alleged to be $35,000.

Plaintiff in error Chesbrough (the case is here on his writ of error, McGraw not having joined) filed a demurrer to the declaration, which was overruled. He then filed

several pleas, one of which alleged that he was not guilty of the wrongs and injuries complained of, and gave notice that under the latter he would "insist [upon] and give in evidence" certain matters of defense.

The case was tried to a jury. The 3d, 6th, 7th, 8th, 9th and part of the 10th counts were withdrawn from their consideration. A verdict was returned for plaintiff in the sum of $22,662.98, upon which judgment was entered. It was affirmed by the Court of Appeals. 221 Fed. Rep. 912.

This case had once before been to the Circuit Court of Appeals where its facts were reviewed and we may refer to the report of the case for them. 195 Fed. Rep. 875.

It there appears that in October, 1902, the bank reported a capital of $200,000, a surplus of $75,000 and undivided profits of $27,000. Its total loans and discounts were about $100,000.

On October 3, 1902, the bank held as loans (so considered by the court and the Comptroller of the Currency) the paper of the Maltby Lumber Company to the amount of $402,000, which had accumulated under the personal direction of the then president and practical manager of the bank. The Comptroller required that the loan be reduced to the permitted 10%. The Comptroller's letter was presented to the board. Inquiry during the next few weeks developed the general character of the Maltby paper and that most of it was not drawn against any real debt and in fact represented no liability, except Mrs. Maltby's. Its net worth shown by a statement of Maltby, who was called before the board, was about $188,000, but there were many suspicious circumstances about the inventory, and it did not appear how much of this primary liability to the bank was included among the debts. There was subsequently liquidation of the Maltby Company's affairs, and as it proceeded the bank charged off successive amounts of the Maltby paper. In this way the total loss charged off prior to the trial of the cause (first trial) was $223,000.

A comparatively small amount remained uncollected and not charged off. A generally similar situation existed as to another line of paper, of one Brotherton, upon which $47,000 had been written off as worthless before April, 1909. The shares of stock were $100 par value, and the writing off of these two items caused a loss in book value of $135 per share.

The defendants had been two of the directors for many years, during which time reports to the Comptroller were frequently made and published as required by the statute and as called for by him, and continuously until 1904 the entire Maltby line was carried at its face in the "loans and discounts" and was reported as part of the bank's assets. Plaintiff, at various dates from March to December, 1903, bought the bank stock at its supposed market value, averaging about $151 per share, and aggregating $15,000 par and $23,400 purchase price.

The case went to trial to a jury. Certain counts were withdrawn, and upon those submitted a verdict was returned and judgment entered upon it for the amounts plaintiff had paid for his stock, less its then book value, after deducting its pro rata share of the actual loss written off on account of the Maltby and Brotherton paper, with interest,—an average total of $167 per share.

The following were the rulings of the court below:

(1) The general demurrer was rightly overruled. The making and publishing of the reports are not merely for the information of the Comptroller but are to guide the public, and he who buys stock in a bank in reliance upon the reports has a right of action under § 5239, Rev. Stats., against any officer or director who, knowing its falsity, authorizes such report. "The one suffering such damages is within the statutory description 'any other person.'" The conclusion was deduced from *Yates* v. *Jones National Bank*, 206 U. S. 158, and *Yates* v. *Utica Bank*, 206 U. S. 181, and other cases in the state and federal courts.

(2) The damages in such a case are personal to the plaintiff. He sues in his own right, not for the association.

(3) Such action involves no direct showing of negligence; the sole primary issue is whether defendants caused or permitted to be made a statement of the bank's condition upon which statement plaintiff relied to his injury, and which statement defendants knew was materially false. And in the trial of this issue the detailed history of the entire transaction is admissible as tending to show whether the loans were in fact bad and whether defendants knew that fact. This scienter is the material condition and plaintiff can select one of the directors as sole defendant or join others with him.

(4) Considering the evidence, the court concluded that it justified a finding of liability against the defendants, but not to the extent of the judgment. The court was of opinion that the basis of loss to the bank, that is, the amount which should have been charged off, was taken in the verdict and judgment at the sum of $223,000 and should not have been greater than $135,000, excluding entirely, as not sustained by the evidence, the Brotherton debts. The court, therefore, reversed the judgment and remanded the case for a new trial.

Plaintiff moved to modify the opinion and judgment in such manner as to permit him to remit such part of it as the court thought was not supported by the evidence and that, as modified, the judgment be affirmed. The motion was denied.

The second trial resulted again, as we have said, in a verdict and judgment for plaintiff. In reaching them a basis beyond $135,000 was taken and the Circuit Court of Appeals held this was error but gave to plaintiff permission to file within thirty days from the filing of the opinion in the trial court a written election to reduce the judgment by the sum in which it exceeded the $135,000 basis.

This was done, and judgment entered accordingly.

The case on the facts involves two simple propositions —the scienter of defendant when he attested the report to the Comptroller and the circumstances under which two dividends were declared. Upon these propositions twice have juries held against defendant and twice has the Circuit Court of Appeals held that there was sufficient evidence to sustain their verdicts, modifying only as to certain items of damages. In consideration of our reviewing power and without reciting the testimony, it is enough to say that the findings on these propositions have substantial evidence to support them.

But it is urged that the plaintiff brought this action under § 5239, Rev. Stats., in the Circuit Court of the United States for the Eastern District of Michigan, in which all of the parties resided, and that not that court but the state court had jurisdiction.

The cited section provides for a forfeiture of the franchise of a national bank if its directors knowingly violate or knowingly permit the violation of any of the provisions of the National Bank Act and further provides that in case of such violation "every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation."

This section was considered in *Yates* v. *Jones National Bank*, 206 U. S. 158, 179, and it was held that the rule expressed by it is exclusive and precludes a common-law liability for fraud and deceit. To the same effect are *Thomas* v. *Taylor*, 224 U. S. 73, and *Jones National Bank* v. *Yates*, 240 U. S. 541. Necessarily a federal question is involved and there was jurisdiction in the courts below. § 5198, Rev. Stats.; § 4 of the Act of August 13, 1888, 25 Stat. 436. *Herrmann* v. *Edwards*, 238 U. S. 107, is not opposed to this view. It was there held only that the federal cause of action should be, in the absence of diverse

citizenship, stated in the bill to give the federal court jurisdiction, a condition that is complied with by the declaration in the present case.

Defendant attempts to distinguish the present case from the cases cited above and, in 77 assignments of error concentrated into 18 points, urges the contentions we have noted and contentions based on the rulings of the trial court in the admission and rejection of evidence and charges to the jury and the rulings of the Circuit Court of Appeals, and attempts to support them by an elaborate and minute argument. Indeed, the whole case is reviewed and all of the deductions made by the lower tribunals from the evidence combated and the contentions reviewed which were disposed of by the Circuit Court of Appeals, in whose decision we concur. To answer in detail would extend this opinion to repellent length. It is enough to say of them that they show no reversible error.

*Judgment affirmed.*