## AMERICAN SURETY CO. OF NEW YORK v. SIEBRECHT et al.

### No. 5206.

District Court, E. D. New York.

March 18, 1935.

Gerald Morrell, of New York City, for plaintiff.

Alexander T. Wells, of New York City, for defendants Albert R. Allen, Edward F. Wagner, and Albert F. Graff.

Harper & Matthews, of New York City (Harold Harper and Albert C. Rothwell, both of New York City, of counsel), for defendant Benjamin A. Matthews.

BYERS, District Judge.

This is a motion to dismiss, for lack of jurisdiction, bill of complaint in equity in which an accounting is sought from thirteen individuals constituting the officers, directors and members of the executive committee of the Long Island National Bank, now defunct.

The case has been at issue since December of 1930, and has now emerged to this extent from an unexplained coma.

The material paragraphs of the challenged pleading are the following:

Fourth: Alleges in substance that the action is brought by the plaintiff as assignee of the bank to compel the defendants to account for sums of money taken and appropriated by the officers and directors from the funds of the bank by reason of their misconduct, and to hold them accountable for losses sustained by the bank so caused "under the provisions of the National Bank Laws and of the Revised Statutes of the United States."

The amount involved is said to be $41,452.44.

Seventh: Alleges misapplication and misappropriation of the following items: $38,490.50, $1,229.94, and $1,732.00, making a total of $41,452.44.

These losses are said to have been "caused by the negligence of the above named directors and officers and each of them and by the neglect of their duties," in that:

Cashier's checks were issued by two of the defendants, the cashier and assistant cashier, in the name of the bank without the latter's having received equivalent values; this is said to have been directed, aided and abetted by the members of the executive committee and directors; also that the directors "knowingly permitted, assented and approved of the acts and actions of the said officers and of the executive committee."

The foregoing seem to point to a larceny.

Eighth: Alleges in substance that stock trading accounts in fictitious names were opened with stock brokerage concerns in the city of New York by the cashier, assistant cashier and members of the executive committee through which accounts personal transactions were conducted "in violation of the provisions of the Revised Statutes of the United States relating to national banks."

Payments for stock and securities purchased and sold in said accounts were made by the issuance of cashier's checks which were issued, delivered and paid without receipt of funds or credits from the individuals involved, and "that by said transactions debit balances were unlawfully created in the cashier's check account and which balances, at times, totaled more than $146,241.08, all of which operations and transactions were knowingly permitted by the members of the board of directors of the said banking association in violation of the statutes as aforesaid."

Ninth: This alleges borrowings by the officers and members of the executive committee from the bank in their own names and in the names of their relatives and in fictitious names "and in many instances and on many occasions causing the amount of their loans to be in excess of the lawful limit, and in addition thereto committing forgeries of the names of the makers of the notes and causing falsification of the bank's records and reports, and all of which transactions were knowingly permitted, assented and approved by the other members of the board of directors in flagrant and wilful violation of the Revised Statutes of the United States."

Tenth: This alleges in substance the falsification of the bank's books and the transfer in and out of the suspense account of debit balances created as stated; also the issuance of a series of spurious promissory notes for the purpose of discounting the same and applying the credit therefor in liquidation of the suspense account; that these notes were approved by the executive committee and entered upon the discount register with the approval of the directors; that there was falsification of the books in reference to these transactions "all in furtherance of the aforesaid system and plan for the illegal use and appropriation of the funds of the said banking association."

It is alleged that certain securities were liquidated under instruction of examining

officials, which securities had been illegally purchased by its officers and members of the executive committee with the result that the bank lost $38,490.50.

This seems to amount to a charge of larceny.

Eleventh: This alleges that the loss was caused by the negligence of the defendants and their neglect of duty.

Twelfth: This alleges in effect larcenies by the assistant cashier totaling $1,299.94, which losses were caused by the negligence and acts of neglect, and that the various larcenies of the assistant cashier were committed by him under authority received from the executive committee in violation of law and because the directors were negligent in the performance of their duties.

Thirteenth: This charges a larceny of $1,732.00 by the officers and members of the executive committee as the result of the handling of a certain specified loan.

Fourteenth: This alleges generally that all of the foregoing facts were known to the several members of the board of directors or could have been readily ascertained by an examination of the books.

Fifteenth: This alleges that the bank made a demand upon the defendants or some of them to make good the losses, which demand has not been complied with.

Sixteenth: This alleges the assignment of this cause of action to the plaintiff corporation.

It appears from the face of the pleading that diversity of citizenship does not exist, and consequently the court has no jurisdiction of this cause, unless the bill sets forth one or more causes of action arising under the laws of the United States.

The plaintiff argues that the bill so reads, in that violations of the following statutes are involved:

(A) Rev. St. § 5147, as amended (title 12 U. S. C. § 73 [12 USCA § 73]).

This statute provides that each director of such a bank shall take an oath that he will diligently and honestly administer the affairs of the bank and will not violate or permit the violation of any of the provisions of this title (i. e., the statutes having to do with banks and banking), and that the oath shall be transmitted for filing to the Comptroller of the Currency.

It is argued that these defendants offended against this section in that they permitted the alleged violations of law to occur. It is the failure to abide by the requirements of the oath, not the failure to enter into it, which the plaintiff urges as constituting an offense against the statute.

This distinction is important because the jurisdiction of this court depends upon the existence of a controversy under a Federal statute, between the parties, rather than the assertion of dereliction of a common law duty. If the latter alone is embodied in the bill, this court may not function because of the absence of diversity of citizenship. See Herrmann v. Edwards, 238 U. S. 107, 35 S. Ct. 839, 59 L. Ed. 1224. The Federal cause must be stated in the bill. See Chesbrough v. Woodworth, 244 U. S. 72, 37 S. Ct. 579, 61 L. Ed. 1000.

The failure to live up to the requirements of the oath has been held to involve a breach of the common law rather than the statutory duty of directors. See Davis v. McFarland (C. C. A.) 15 F.(2d) 612, certiorari denied 273 U. S. 754, 47 S. Ct. 457, 71 L. Ed. 875.

Here the court, in affirming the dismissal of a comparable bill, says that, if a liability existed for the making of a loan in excess of the statutory limit, it arose not because of the violation of the directors' oaths.

The distinction between the statutory and the common law liability of such directors is discussed and applied in Yates v. Jones National Bank, 206 U. S. 158, 27 S. Ct. 638, 51 L. Ed. 1002.

Apparently the plaintiff urges that the closing allegation quoted from paragraph seventh meets the deficiency pointed out in the Yates Case, but the difficulty is with his contention that the failure of the defendants to live up to the terms of their respective oaths must visit liability upon them, not only for the alleged making of loans beyond the statutory limit (title 12 U. S. C. § 84 [12 USCA § 84]) but also for the violation by those guilty of the criminal offenses of embezzlement, and of receiving commissions and gifts for procuring loans, etc. (title 12 U. S. C. § 592 and § 595 [12 USCA §§ 592 and 595]).

There is no such statutory liability as the plaintiff urges. If the laws under which this cause is sought to be maintained provided in terms that directors should answer personally for crimes committed by officials of the bank, it would be necessary to plead the facts concerning the convic-

tions of the officers by which the commission of the crimes would be established. There is no such allegation in the bill, but, if there were, the result would be the same, because, if responsibility attaches to the officers for such offenses, it is a common law and not a Federal statute liability.

Cases in which receivers of national banks have brought suit are not persuasive on the general question of liability, for receivers can sue in the Federal courts to enforce the common law liability. Bowerman v. Hamner, 250 U. S. 504, 39 S. Ct. 549, 63 L. Ed. 1113; Hughes v. Reed (C. C. A.) 46 F.(2d) 435.

It results therefore that the alleged failure to perform the duties undertaken by the terms of the oath may impose a common law liability upon the directors for larceny from the bank, but it is not the subject of liability imposed by the terms of any Federal statute.

■ (B) Rev. St. § 5200, as amended (title 12 U. S. C. § 84 [12 USCA § 84]). It is next argued that this statute applies, in that the bill sufficiently alleges that total obligations in excess of 10 per cent. of the capital stock and unimpaired surplus were knowingly permitted, assented to and approved. Apparently paragraph ninth of the bill is relied upon in this connection. The pleading on this subject reads "and in many instances and on many occasions causing the amount of their loans to be in excess of the lawful limit * * *," referring to borrowings by the officers and members of the executive committee by which they maintained their stock speculation accounts.

This section must be read in connection with Rev. St. § 5239 (Title 12 U. S. C. § 93 [12 USCA § 93]) which provides that, in the case of violations of any of the provisions of the Chapter (chapter 2, title 12 U. S. C. [12 USCA c. 2, § 21 et seq.]), every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation.

If the bill properly pleads a violation of section 5200, Rev. St., as amended, it must be sustained.

Whether the pleader's purpose is to allege such an offense, cannot be discerned with clarity. The method of setting forth such a cause has been recently referred to in Hughes v. Reed (C. C. A.) 46 F.(2d) 435, 437, in which the court says: "The pleading should allege the wrong, when it was committed, and the loss occasioned thereby, as far as it is possible so to do. The pleader has shot at the covey with a shotgun; he should aim at a particular bird with a rifle. While the pleading is open to criticism, and the motions requiring better particulars should have been sustained in part, we are not prepared to say, as did the master, that it failed to state a cause of action."

The foregoing describes the present bill in apt language. If it can be amended so as to present one or more clear issues, concerning loans alleged to have been made in violation of section 5200, Rev. St., as amended, under circumstances which would visit liability upon one or more of the defendants, a reasonable opportunity may be afforded to the plaintiff to do so.

In its present form, the bill is not sufficient to present a cause under this statute of which this court would have jurisdiction.

■ The objecting defendants urge that the plaintiff has no standing because it is an assignee of the bank, citing section 41, subd. 3, of the Personal Property Law of New York (Consol. Laws N. Y. c. 41), respecting the transfer of causes of action, reading in part: "But this section does not apply, where the rights or liabilities of a party to a claim or demand, which is transferred, are regulated by special provision of law * * *."

The plaintiff's alleged cause is not thought to be "regulated" within the meaning of the foregoing.

McKinnon v. Morse (C. C.) 177 F. 576, is deemed to indicate that the plaintiff's succession to the bank's cause of action is sufficiently secure to establish its status in this action.

The motion to dismiss will be granted except as to the matters comprehended in paragraph ninth touching the alleged making of loans contrary to section 5200, Rev. St., as to which the plaintiff may have leave to file and serve an amended bill within 20 days after service of the order to be entered hereon.

Settle order.