**DENICKE v. BRIGHAM et al.**
No. 21935–W.

District Court, N. D. California, S. D.
May 14, 1942.

Aaron M. Sargent, of San Francisco, Cal., for plaintiff.

John Parks Davis, Tobin & Tobin, Pillsbury, Madison & Sutro, Peirce Coombes, Willard L. Ellis, Hartley F. Peart, Lloyd S. Ackerman, Thomas A. Thacher, Wm. M. Abbott, Theodore J. Roche, Young, Hudson & Rabinowitz, Norman A. Eisner, and Brobeck, Phleger & Harrison, all of San Francisco, Cal., for defendants.

NORCROSS, District Judge.

This is an action to recover damages based on alleged fraud and conspiracy growing out of the consolidation of the Anglo & London Paris National Bank of San Francisco, and the Anglo California Trust Company, a state bank, organized under the laws of the State of California, and, also, a member of the Federal Reserve System, which consolidation became effective June 30, 1932, under the provisions of 12 U.S.C.A. § 34a; the consolidated banks, thereafter, becoming known as the Anglo California National Bank of San Francisco. Plaintiff's complaint was filed August 7, 1941, and his amended complaint, now under consideration, was filed December 11, 1941. The basis of plaintiff's complaint is that he was a stockholder of the

Anglo California Trust Company and that defendants were officers and directors of one or both of the banks above named. Defendants have filed motions to dismiss upon the ground that this Court is without jurisdiction. Jurisdiction of this Court is based upon the following allegation in plaintiff's complaint: "This is an action arising under the Constitution and laws of the United States,—particularly under 12 U.S.Code, Secs. 34a, 73, 93, 161 and 501a, [12 U.S.C.A. §§ 34a, 73, 93, 161, 501a], and under the Fifth Amendment to the Constitution of the United States. The damages claimed are the result of violation of such provisions. The court has original jurisdiction thereof under 29 [28] U.S.Code, Sec. 41 sub. 1, on the ground that the action is one which arises under such Constitution and laws."

Section 34a, supra, provides: "Any bank * * * of any State, * * * may be consolidated with a national banking association located in the same State, * * * under the charter of such national banking association on such terms and conditions as may be lawfully agreed upon by a majority of the board of directors of each association or bank proposing to consolidate, and which agreement shall be ratified and confirmed by the affirmative vote of the shareholders of each such association or bank owning at least two-thirds of its capital stock outstanding, * * * at a meeting to be held on the call of the directors after publishing notice of the time, place, and object of the meeting for four consecutive weeks in some newspaper * * *, and after sending such notice to each shareholder of record by registered mail at least ten days prior to said meeting. * * * If such consolidation shall be voted for at said meetings by the necessary majorities of the shareholders of the association and of the State or other bank proposing to consolidate, and thereafter the consolidation shall be approved by the Comptroller of the Currency, any shareholder of either the association or the State or other bank so consolidated, who has voted against such consolidation at the meeting of the association of which he is a stockholder, or has given notice in writing at or prior to such meeting to the presiding officer that he dissents from the plan of consolidation, shall be entitled to receive the value of the shares so held by him if and when said consolidation shall be approved by the Comptroller of the Currency, * * *."

Section 73, supra, refers to the oath to be taken by every director of a bank which is a member of the Federal Reserve System which oath shall be transmitted to the Comptroller of the Currency.

Section 93, supra, relates to forfeiture of franchise and personal liability of directors for violation of provisions of the chapter to be determined in suit brought by the Comptroller of the Currency. Section 161 deals with reports required to be made to the Comptroller of the Currency. Section 501a relates to a forfeiture of franchise for failure to become a member bank of the Federal Reserve System or to comply with the provisions of the chapter applicable thereto to be determined in a suit brought by the Comptroller of the Currency.

The main contention on behalf of plaintiff is to the effect that the portion of the provision of Section 34a, quoted supra, requiring notice to be published and sent to stockholders by registered mail "of the time, place, and object of the meeting" of stockholders to consider ratification of the agreement entered into by the directors of the respective banks relative to consolidation, should be so construed as to require a statement to be contained therein respecting the rights of stockholders, who may vote against the ratification of such agreement, as such rights are set forth in said section. This contention presents a question not heretofore having been passed upon. Provision for consolidation of national banking associations was made by Act of Congress of date November 7, 1918, 12 U.S.C.A. § 33 et seq. By amendment thereof of date February 25, 1927, provision was made for consolidation of State banks with national banking associations. Additional amendments are of date June 16, 1933, and August 23, 1935. No material change was made in the said act of 1918, by the amendments thereto of 1927, 1933 and 1935, respecting character of notice to be published and sent by registered mail to stockholders "of the time, place, and object of the meeting," to consider ratification of the agreement of consolidation entered into between the directors of the respective banks and approved by the Comptroller of the Currency. If matters respecting stockholders rights or interests, in the event of ratification, were intended by the Congress to be included in the word "object," it might well be assumed, that the word in the plural form instead of the singular would have been used or else all or certain incidental

matters, dealt with in the statute, would have been expressly mentioned. The fact that no question appears to have been raised in any Court respecting the form of notice required to be given stockholders for a period of more than twenty years prior to the institution of this action and one other, heard in conjunction therewith, would indicate that the form of notice, herein in question, was in conformity with the provisions of the statute as 'construed by the Comptroller of the Currency. In support of 'the motions to dismiss there was submitted a printed booklet containing: "Instructions of the Comptroller of the Currency relative to consolidation of National Banks and of State Banks with National Banks," published by the Government Printing Office in 1928, comprising 37 printed pages exclusive of statement of "Contents" and "Index." Instruction 4 provides for submission of a proposed agreement of consolidation to the Comptroller before execution; that the same "will then be examined and the banks will be advised what changes, if any, will be necessary to make before it is executed." Instruction 13 provides: "A copy of the consolidation agreement duly executed should be forwarded to the Comptroller of the Currency immediately upon its execution. Blanks and instructions for meeting of shareholders called to ratify the agreement will not be furnished until agreement has been received by the Comptroller of the Currency and has been approved."

Instruction "14 Notice to Shareholders" contains provisions reading: "* * * notice of time, place and object of the meeting * * *. When a State bank is consolidated * * * the act * * * requires the same notice to be given as was given in the case of two or more national banks, * * *."

Instruction "15 Ratification of Agreement By Stockholders" contains the "form" of resolution "furnished by the comptroller." The form is set out and recites: "notice having been given of the time, place and object of the meeting" and contains blank spaces for "Name of Shareholder, Residence, Name of Proxy, Number of Shares," under respective headings: "Stock voted for resolution," "Stock voted against resolution."

Instructions 19 and 20 deal, respectively, with "Approval of Consolidation" and "Form of Certificate of Approval," to be made by the Comptroller of the Currency. The form of Certificate recites: "Whereas by satisfactory evidence presented * * *, it has been made to appear that the directors and shareholders * * * have complied with all the provisions of an Act of Congress, * * *. Now, therefore, I, ———, Comptroller of the Currency, do hereby certify * * * that the consolidation is hereby approved."

Instruction "24. Rights of Shareholders Who Do Not Vote for the Consolidation" deals at some length with the rights of stockholders, so voting.

The notice to stockholders concerning time and place of meeting to consider ratification of the agreement of consolidation is set out as an exhibit to plaintiff's complaint and reads: "Notice is hereby given, that, pursuant to call of its directors, a special meeting of the shareholders * * * will be held * * * for the purpose of considering and determining by vote whether an agreement to consolidate * * * under the provisions of the laws of the United States, shall be ratified and confirmed, and for the purpose of voting upon any other matters incidental to the proposed consolidation of the two banks. A copy of the aforesaid agreement executed by a majority of the directors of each of the two banks, providing for the consolidation, is on file at the bank and may be inspected during business hours."

While the foregoing notice only made reference to "the laws of the United States," an inspection of the copy of the agreement, stated to be "on file at the bank," for such purpose, "during business hours," would have disclosed that the first paragraph of the agreement stated that it was "made * * * pursuant to the authority given by, and in accordance with the provisions of an Act of Congress of the United States entitled 'An Act to provide for the consolidation of National Banking Associations,' approved November 7, 1918, as amended February 25, 1927, * * *." (Plaintiff's Exhibit A.) In the city of San Francisco, it would not have been difficult for anyone interested in the subject matter to have made, or cause to be made, a personal examination of the Federal Statute and amendment thereof referred to specifically.

It is the conclusion of the Court that the said notice to shareholders, above referred to, complies with the provisions

of the statute as the word "object," expressed therein, deals with the entire subject matter of consolidation inclusive of rights of shareholders and, hence, there is no sound reason supporting the contention that a court should so construe the provision of the statute as to include therein provision that the notice should include a statement of the rights of shareholders voting respectively for or against the adoption of the resolution approving consolidation.

This is not an action, as alleged, arising in any respect, under the Fifth Amendment to the Constitution of the United States, as such Amendment is not directed against acts of individuals but only against certain action upon the part of the Federal Government. Corrigan v. Buckley, 271 U.S. 323, 46 S.Ct. 521, 70 L.Ed. 969.

A number of sections of the United States Code, dealing with the subject matter of National banks, make specific provision for suits in Federal Courts. There is no such specific provision respecting a suit, such as here under consideration, where the complaint is based on alleged conspiracy on the part of directors to publish a false report of the condition of one of the banks to be consolidated and thus, by fraudulent means, to induce action upon the part of shareholders, which they would not have otherwise taken, occasioning a financial loss. 12 U.S.C.A. § 93; 28 U.S.C. A. § 41, subd. (16). Where a shareholder seeks to recover damages as a result of such alleged fraudulent action, jurisdiction of a court to determine the same, whether Federal or State, is controlled by the provisions of the statutes respecting diversity of citizenship and the amount involved. In the instant case, neither the complaint or the amended complaint contains an allegation of diversity of citizenship. In the absence of such allegation, there is nothing presented upon which the requisite facts to confer jurisdiction are made to appear. Herrmann v. Edwards, 238 U.S. 107, 35 S.Ct. 839, 59 L.Ed. 1224; Whittemore v. Amoskeag Nat. Bank, 134 U.S. 527, 10 S. Ct. 592, 33 L.Ed. 1002; Davis v. McFarland, 5 Cir., 15 F.2d 612; American Surety Co. v. Siebrecht, D.C., 10 F.Supp. 306. See, also, Connolly v. First Nat. Bank-Detroit, 6 Cir., 86 F.2d 683, certiorari denied 301 U.S. 692, 57 S.Ct. 795, 81 L.Ed. 1348.

It is the conclusion of the Court that the motions to dismiss should be granted.

It is so ordered.