Ellis L. Pierson and George H. Bohlinger, Jr., both of Trenton, for plaintiffs.

William H. Speer, of Jersey City, and J. Mitchell Reese, and Herbert W. Backes, both of Trenton, for defendant.

FORMAN, District Judge.

Plaintiffs, New Jersey residents, common share-holders of the defendant national bank organized under the laws of the United States with its principal place of business in Trenton, New Jersey, bring this suit for themselves and on behalf of the other common share-holders. They allege, among other things, that the stock of defendant is divided into three classes; namely, preferred "A", held entirely by the Reconstruction Finance Corporation, preferred "B", held for the most part by certain members of the board of directors of the defendant, and common shares of which only a minority interest is held by the board of directors. They further allege that the Reconstruction Finance Corporation and the holders of preferred "B" stock propose

**BACHMAN v. FIRST–MECHANICS NAT. BANK OF TRENTON.**

No. 9569.

District Court, D. New Jersey.

Jan. 18, 1947.

an increased issuance of common stock for the purpose of liquidating the preferred "B" stock. They allege that, according to the articles of association of defendant, such action requires the vote of two-thirds of the common share-holders, but that it is proposed that the action should be taken upon the vote of the holders of the preferred "A" stock, the preferred "B" stock and the common stock. No charge of diversity of citizenship is made in the complaint. The plaintiffs allege that the execution of the proposed scheme to increase the common stock will work irreparable damage to those common share-holders who are not holders of the preferred "B" stock. The complaint prays for the following relief:

"1. The First-Mechanics National Bank, which is the defendant of this suit, may answer this action and each and every allegation thereof.

"2. That this court, by its order, decree that the defendant, its officers, directors, agents, servants, tellers and judges of election at the stockholders meeting called for January 14, 1947, or any adjournment thereof, be enjoined from:—

"(a) Proceeding to the election of directors until after defendant association will have performed the acts and things required of it to be performed for the application of the existing reserve fund for retirement of preferred stock as set out in Article Fourth of the Articles of Association, particularly in Sections 9 and 10 thereof, to the end that not less than 130,000 shares of preferred stock "A" now outstanding will have been retired before such election.

"(b) Permitting to be voted any shares of preferred stock "A" or of preferred stock "B" on the matters set out in Paragraph 4 of the Agenda of said meeting contained in the Notice of Meeting unless and until holders of record on the day of meeting having in their names on the stock records of Defendant Association at least two-thirds of all the shares of common stock will have voted in favor of the items set forth in said paragraph 4 of said Agenda.

"(c) Presenting or permitting to be considered an amendment to the Article of Association for the sale of any additional shares of common stock as set out in said paragraph 4.

"(d) Issuing or causing to be issued any new common stock or warrants therefor as proposed in said Notice of Meeting unless and until holders of record on the day of said meeting having in their names on the stock records of Defendant Association at least two-thirds of all of the shares of common stock will have voted in favor of the items set forth in said paragraph 4 of said Agenda."

Since the action described in the bill was contemplated at a meeting of the defendant's stockholders to be held on Tuesday, January 14, 1947, a motion was made on Monday, January 13, 1947 for a preliminary injunction temporarily effecting the relief pending final hearing for which the complaint prayed as above set forth.

In opposition to the motion defendant challenged the jurisdiction of this court to entertain the action.

The plaintiffs pleaded in their complaint jurisdiction over the case in this court by virtue of the following statutes:

" § 94. Venue of suits.

"Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases." 12 U.S.C.A. § 94.

They also point to the following sections of the National Banking Act:

"(a) Notwithstanding any other provision of law, whether relating to restriction upon the payment of dividends upon capital stock or otherwise, the holders of such preferred stock shall be entitled to receive such cumulative dividends at a rate not exceeding 6 per centum per annum and shall have such voting and conversion rights and such control of management, and such stock shall be subject to retirement, in such manner and upon such conditions, as may be provided in the articles of association with the approval of the Comptroller of the Currency. The holders of such preferred stock shall not be held

individually responsible as such holders for any debts, contracts, or engagements of such association, and shall not be liable for assessments to restore impairments in the capital of such association as now provided by law with reference to holders of common stock." 12 U.S.C.A., § 51b.

"Any national banking association may, with the approval of the Comptroller of the Currency, and by a vote of shareholders owning two-thirds of the stock of such associations, increase its capital stock to any sum approved by the said comptroller, but no increase in capital shall be valid until the whole amount of such increase is paid in and notice thereof, duly acknowledged before a notary public by the president, vice president, or cashier of such association, has been transmitted to the Comptroller of the Currency and his certificate obtained specifying the amount of such increase in capital stock and his approval thereof, and that it has been duly paid in as part of the capital of such association: Provided, however, That a national banking association may, with the approval of the Comptroller of the Currency, and by the vote of shareholders owning two-thirds of the stock of such association, increase its capital stock by the declaration of a stock dividend, provided that the surplus of said association, after the approval of the increase, shall be at least equal to 20 per centum of the capital stock as increased. Such increase shall not be effective until a certificate certifying to such declaration of dividend, signed by the president, vice president, or cashier of said association and duly acknowledged before a notary public, shall have been forwarded to the Comptroller of the Currency and his certificate obtained specifying the amount of such increase of capital stock by stock dividend, and his approval thereof." 12 U.S.C.A. § 57.

"Any national banking association may, with the approval of the Comptroller of the Currency, by the vote of shareholders owning two-thirds of the stock of such association, increase its capital stock, in accordance with existing laws, to any sum approved by the said comptroller, notwithstanding the limit fixed in its original articles of association and determined by said comptroller; and no increase of the capital stock of any national banking association either within or beyond the limit fixed in its original articles of association shall be made except in the manner herein provided." 12 U.S.C.A. § 58.

They assert that the defendant can amend its articles of association and take action to increase its capital stock only pursuant to such federal statutes. They state that they have alleged violations thereof by the defendant which bring it within the jurisdiction of the federal court.

Prior to 1882 the federal courts had jurisdiction of suits involving national banks because they were corporations of federal origin. In that year a statute was passed which was from time to time amended or reenacted until it took its present form as follows:

"Of all cases commenced by the United States, or by direction of any officer thereof, against any national banking association, and cases for winding up the affairs of any such bank; and of all suits brought by any banking association established in the district for which the court is held, under the provisions of chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by said chapter. And all national banking associations established under the laws of the United States shall, for the purposes of all other actions by or against them, real, personal or mixed, and all suits in equity, be deemed citizens of the States in which they are respectively located." 28 U.S.C.A. § 41, subd. (16).

The history behind this statute is discussed in Hermann v. Edwards, 1915, 238 U.S. 107, 35 S.Ct. 839, 59 L.Ed. 1224. Also see Continental National Bank v. Buford, 1903, 191 U.S. 119, 24 S.Ct. 54, 48 L.Ed. 119; Whittemore v. Amoskeag Bank, 1890, 134 U.S. 527, 10 S.Ct. 592, 33 L.Ed. 1002; Leather Manufacturers' Nat. Bank v. Cooper, 1887, 120 U.S. 778, 7 S.Ct. 777, 30 L.Ed. 816. From the above cases we find that since 1882 national banks for the purpose of suing and being sued are treated as citizens of the states in which they are located, and that the jurisdiction of the federal courts may not be invoked simply upon the ground that they were created by

and exercised their powers under acts of Congress.

Plaintiffs support their claims of jurisdiction with the cases of Denicke v. Anglo California Nat. Bank of San Francisco et al., D.C.1939, 26 F.Supp. 240 and Larabee v. Dolley, C.C.1909, 175 F. 365, see reversal Dolley v. Abilene Nat. Bank, C.C.1910, 179 F. 461, 32 L.R.A., N.S., 1065; Assaria State Bank v. Dolley, 1911, 219 U.S. 121 31 S.Ct. 189, 55 L.Ed. 123.

In the former case the complaint charges a fraudulent conspiracy in violation of certain specified sections of the National Bank Act, 12 U.S.C.A. §§ 84, 93, 501a, 503, 595, 375, 375a, 371, and 371c. It does appear that the court held, in the absence of diversity of citizenship, that there was federal jurisdiction in cases involving national banks by virtue of 12 U.S.C.A. § 94. Reliance was placed in the decision upon Chesbrough v. Woodworth, 244 U.S. 72, 37 S.Ct. 579, 61 L.Ed. 1000, but in that case although there was an absence of diversity of citizenship the action was brought under § 5239 Revised Statutes, 12 U.S.C.A. § 93, providing for the forfeiture of the franchise of a national bank when its directors knowingly violated provisions of the National Bank Act, and for the payment of damages by such directors. It was held there that a federal question was involved because the statute cited was exclusive of any common law remedy. If the district court in the case of Denicke v. Anglo California Nat. Bank, supra, intended to overlook the presence or absence of a federal question, and we are not sure from the facts stated that it did, the holding would be in conflict with a later decision in its circuit court; namely Denicke v. Brigham, 9 Cir., 142 F.2d 221, wherein the court noticed the absence of a federal question and affirmed a dismissal in the lower court, no other ground of jurisdiction having been asserted.

The latter case submitted by the plaintiffs, Larabee v. Dolley, supra, was a consolidation of three suits against the Bank Commissioner of the State of Kansas and others brought in the Circuit Court of the First Division of Kansas in 1909. All of the suits sought to have declared unconstitutional a statute passed by the State of Kansas in the same year known as the "Bank Guaranty Law" which provided for a fund to be administered by the State for the purpose of securing depositors in banks contributing to the fund in case of insolvency. One of the suits was brought by the Abilene National Bank. On a demurrer to its bill the court held with it that it had jurisdiction to hear its complaint that the Kansas statute was unconstitutional and void as denying equal protection of the law to national banks within the State of Kansas which were debarred from accepting the provisions of the act. Attention is directed to the following language of the court: " * * * yet, when a right is asserted by a national bank under authority of the law of its creation, the determination of such right involves a federal question, of which this court has jurisdiction, if the amount involved be sufficient to confer jurisdiction on this court * * *." 175 F. at page 384.

The plaintiffs urge that this is analogous to the case at bar because the "Internal management of the National Bank is involved" and since the right of the bank to take the action it has proposed must be determined by the laws creating it, and governing its internal management, a federal question is presented. The cited case presents no such question of internal management that we can find. Rather, relief is sought from the impact of certain state legislation upon the national bank, and the analogy is obscure to us.

On the other hand, as argued by the defendant, it is clear that national banks are to sue and be sued in the federal court precisely as in the case of other citizens unless the litigation comes within the purview of statutory exceptions such as those contained in 28 U.S.C.A. § 41 subd. (16).

In Whittemore v. Amoskeag Bank, supra, it was claimed that a federal question was raised since the stockholders' suit was brought under §§ 5209 and 5239 R.S., 12 U.S.C.A. §§ 591, 93. The former section prescribes punishment for embezzlement of the funds of a national bank by directors, etc., and the latter provides for a suit by the Comptroller of the Currency for forfeiture of franchise of a national bank for the intentional violation of its directors of any of the provisions of the title of the Revised Statutes relating to banks. The court sum-

marily overruled the contention that a federal question was raised. In dealing with this point in Hermann v. Edwards, supra, the court stated: " * * * a mere assertion of liability on the part of directors for wrongs for which they might be responsible at common law afforded no basis for jurisdiction." 238 U.S. at page 112, 35 S.Ct. at page 840, 59 L.Ed. 1224.

Under 12 U.S.C.A. § 51b, supra, it is provided that preferred stock shall have such voting and conversion rights, control of management and the shares shall be subject to retirement in such manner and upon such conditions as may be provided in the articles of association, with the approval of the Comptroller of the Currency. Under 12 U.S.C.A. § 57, supra, conditions are prescribed under which shareholders may increase the capital stock of a national banking association and under the following section (58, supra) the shareholders may increase the capital stock, in accordance with existing laws, to any sum approved by the Comptroller of the Currency, notwithstanding the limit fixed in the articles of association. The plaintiffs urge that the articles of association of the defendant, which they charge are being violated, find their sources of authority in these federal laws and hence their suit involves federal statutes within the scope of 28 U.S.C.A. § 41 subd. (16), supra, and presents a federal question over which this court can take jurisdiction. With this contention we cannot agree. We are constrained to the opinion that the question raised by the plaintiffs turns solely upon the alleged misinterpretation of the articles of association by the defendant, and that neither the construction nor the constitutionality of any federal statute is involved in the complaint. The alleged misinterpretation of the articles of association can only give rise to an action based thereon as if the defendant banking association were any other citizen of New Jersey. We are convinced that we would not have jurisdiction over plaintiff's complaint were any other citizen of New Jersey the defendant.

It is understood that the plaintiffs have applied for similar temporary relief to the New Jersey Court of Chancery, but that court found itself precluded by federal statute from granting it. The importance to them of finding a forum which can, if the merits warrant it, award the relief, is readily understandable and invites sympathy. However, the jurisdiction of the federal district court is limited and the court itself is charged not to permit that jurisdiction to be invoked unless the elements upon which it rests are present.

The motion of plaintiffs for a preliminary injunction must be denied.