Simeon GOLAR, on behalf of himself as a shareholder of Freedom National Bank of New York, and in the right of Freedom National Bank of New York, and on behalf of all other shareholders of said corporation similarly situated, Plaintiff,

v.

DANIELS & BELL, INC., Dan Bell Group, Inc., Travers J. Bell, Jr., Travers J. Bell, Sr., Frank Savage, James Dowdy, John H. Howell, Edward Lewis, Wyatt Tee Walker, Sharnia "Tab" Buford as President of Freedom National Bank of New York, Freedom National Bank of New York, Bedford-Stuyvesant Restoration Corporation, Harlem Commonwealth Council, Inc., and the Comptroller of the Currency, Defendants.

No. 82 Civ. 0112 (KTD).

United States District Court,
S. D. New York.

Feb. 19, 1982.

Leonard M. Simon, P. C., New York City, for plaintiff; Peter R. Silverman, New York City, of counsel.

Battle, Fowler, Jaffin & Kheel, New York City, for defendants Freedom National Bank of New York and Sharnia Buford; Gerald J. Fields, Raymond J. Soffientini, New York City, of counsel.

Warshavsky, Hoffman & Cohen, P. C., New York City, for defendants John H. Howell, Edward Lewis, Frank Savage and Wyatt Tee Walker; David W. Cohen, Suzanne M. Warshavsky, New York City, of counsel.

Parker, Auspitz, Neesemann & Delehanty, P. C., New York City, for defendant Bedford-Stuyvesant Restoration Corp.; Barrington D. Parker, Jr., New York City, of counsel.

Lewis W. Tyson, Jr., New York City, for defendant Harlem Commonwealth Council.

**KEVIN THOMAS DUFFY, District Judge:**

This is a stockholder derivative action alleging violations of the National Banking Act, 12 U.S.C. §§ 24, 51b(a) and 71, and of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Plaintiff Simeon Golar is a director of the defendant Freedom National Bank of New York ["Freedom"] and owner of 971 shares of common stock of the bank. Freedom is a national bank and the only Black-owned and operated commercial bank in New York. It has its principal office in Harlem, New York City. On behalf of himself, other shareholders and derivatively on behalf of Freedom, the plaintiff accuses certain members of the board of directors of Freedom of engaging in a course of conduct which prevents Freedom from exercising its right to redeem its convertible stock. The plaintiff seeks *inter alia* an injunction against certain directors of the bank from purchasing the bank's outstanding convertible stock and damages resulting from any

consequent dilution in the common stock's value.

According to the complaint, the defendants have attempted to purchase the convertible stock for their own account in an effort to obtain control of a majority of Freedom's common stock. The complaint alleges that all the outstanding convertible stock of Freedom is presently owned by defendants Bedford-Stuyvesant Restoration Corporation ["Restoration"] and Harlem Commonwealth Council, Inc. ["Harlem Council"], two New York not-for-profit corporations. The defendant directors purportedly arranged to purchase from Restoration and the Harlem Council the outstanding preferred shares of Freedom without disclosing this fact to the entire board.

Under the terms of the convertible stock, Freedom has the right of redemption at a price of either $25 per share or 4⅘ shares of Freedom common stock per share. According to plaintiff, the Board of Directors voted for redemption, but the defendants attempted to thwart the will of the board and instead purchase the outstanding convertible stock for their own use.

The complaint sets forth four claims. The first alleges that Freedom and its President Sharnia Buford failed to implement a December 4, 1981 resolution by Freedom's Board of Directors to redeem the Bank's convertible stock. This resolution allegedly was passed by a vote of six to five. In addition to seeking an injunction compelling Freedom to redeem its convertible stock, count one of the complaint requests an injunction against seven members of the board of directors from acquiring any Freedom convertible stock for their own account.

The second claim alleges that two groups of members of the board of directors, the Bell Group (consisting of Travers J. Bell, Sr. and Travers Bell, Jr.) and the Savage Group (consisting of defendants John H. Howell, Edward Lewis, Frank Savage, James Dowdy and Wyatt Tee Walker) are attempting to purchase 10,000 shares of convertible stock with the intent to convert these

shares into common stock shares. This will result in an increase in the number of outstanding shares of common stock currently held by 1,770 Freedom shareholders and effectively vest control of Freedom in either the Savage or the Bell group. In addition, this action will purportedly disrupt not only the continuity of management but also the policies of the bank. Thus, according to the plaintiff, the defendant directors are breaching "their fiduciary duty and obligation to faithfully and diligently administer the affairs of Freedom as directors of the bank." Amended Complaint, ¶ 34.

The third claim alleges that the Savage group has committed fraud in violation of Section 10(b) of the Exchange Act of 1934 by attempting to purchase the 10,000 shares of convertible stock discussed in Count II and thereby prevent Freedom from redeeming the same stock. Three vaguely described instances of fraud are alleged. First, the defendants Savage, Dowdy, Howell, Lewis and Walker while acting in their capacities as directors of the Bank failed to disclose to the bank or its disinterested directors that the defendants had offered on May 11, 1981 to purchase from Restoration and the Harlem Council the bank's convertible stock for a purchase price of $1.1 million. Second, the defendants also failed to disclose that they had actually entered into an agreement with Restoration to purchase the convertible stock. Third, at a December 4, 1981 meeting of the board of directors the Savage Group withheld this information and "thereupon manipulated the vote of the board of directors with respect to the December 4 Redemption Resolution and ... prevailed upon the management of the bank to refuse to implement such redemption resolution." Amended Complaint, ¶ 39.

The fourth claim asserts that if either the Savage Group or the Bell Group acquire the convertible stock of Freedom presently held by Restoration the common stock of Freedom will consequently decrease in value by $500,000. This diminution will purportedly result from the defendants' breach of their fiduciary duties. In addition to injunctive relief against all defendants, including Res-

toration and the Harlem Council, plaintiff seeks damages against the Savage Group in the amount of $500,000.

This action was originally commenced in state court where plaintiff obtained an *ex parte* temporary restraining order against Restoration and the Harlem Council from selling or converting their convertible stock. On January 7, the Bell group removed this action to this court. Plaintiff now moves for a preliminary injunction against all defendants from buying or selling Freedom convertible stock and compelling Freedom to redeem the outstanding convertible stock in accordance with a board of directors resolution. On February 3, 1982, I granted plaintiff a temporary restraining order against all defendants except Restoration and the Harlem Council. For the reasons stated below, plaintiff's motion for a preliminary injunction is denied and the case is remanded to the state court.

## DISCUSSION

As a preliminary matter, it should be stated that remand in this case is necessary because of the failure of all fourteen defendants to join in the petition for removal. Evidently, only four defendants (Daniels & Bell, Inc., Dan Bell Group, Inc., Travers J. Bell, Sr. and Travers J. Bell, Jr.) petitioned this court for removal. It is settled law that removal requires the consent of all the defendants. *Chicago R. I. & P. Ry. v. Martin*, 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055 (1900); *Reiken v. Nationwide Leisure Corp.*, 458 F.Supp. 179 (S.D.N.Y. 1978).

More substantive reasons exist, however, for returning this case to the state court. Plaintiff's amended complaint has two purported bases for subject matter jurisdiction under 28 U.S.C. § 1331. Plaintiff alleges violation of the National Bank Act, specifically 12 U.S.C. §§ 24, 51b(a) and 71, and violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). The complaint fails, however, to state a claim for relief under any of these sections of our federal banking and security laws.

### 1. *Banking Laws*

The first section invoked by plaintiff under the banking laws is Section 24 of Title 12 of the United States Code. This section enumerates nine corporate powers of a national banking association. Plaintiff argues that the seventh power is of significance here; that is the bank's power "[t]o exercise by its Board of Directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking . . . ." 12 U.S.C. § 24 (Supp.1981). Plaintiff also invokes Section 71 of Title 12 which provides in part: "The affairs of each association shall be managed by not less than five directors . . . ." Finally, plaintiff refers to Section 51b(a) which provides that the preferred stock of a national bank shall be subject to such terms and conditions as may be provided in the bank's articles of association with the approval of the Comptroller of the Currency. According to the complaint, these sections have been violated by the defendant directors' actions to prevent Freedom from exercising its redemption option. Redemption was purportedly mandated by a lawful vote of the board.

■ The initial question raised by this motion to dismiss is whether the plaintiff has the right to sue directly under any of the invoked sections of the National Bank Act. With respect to Section 71, plaintiff cites only one case, *Wahyou v. Central Valley National Bank*, 361 F.2d 755 (9th Cir. 1966), which purportedly stands for the proposition that a violation of Section 71 raises a federal question for which a private plaintiff may seek equitable relief. *Wahyou* involved an injunction against the implementation of an election of directors. The appeal was dismissed as moot and the court did not at all develop a rationale for permitting the bank and two of its directors to sue. That case is not supportive of plaintiff's position. *Wahyou* concerned the election of board members by stockholders. Such elections are the explicit concern of Section 71. By contrast, the case at bar concerns allegedly improper actions by the board of directors. Section 71 simply does not speak to activities of the board.

■ Another section invoked by the plaintiff, Section 51b(a),[1] concerns the rights of preferred shareholders. No case has been offered by the plaintiff to show that a private right to sue under this section exists. I do not believe one should be created here for a plaintiff who does not even claim to be a preferred shareholder, the class of persons to whom Section 51b(a) was obviously designed to protect. *Cf. Russell v. Continental Illinois National Bank and Trust Co. of Chicago*, 479 F.2d 131 (7th Cir.), *cert. denied*, 414 U.S. 1040, 94 S.Ct. 541, 38 L.Ed.2d 331 (1973) (Participant in mutual fund established by a bank was not part of class of persons protected by Section 24).

The most significant section of the National Bank Act invoked by plaintiffs is Section 24 which enumerates the powers of a national bank. Paragraph seven of Section 24 basically provides that the power to engage in the business of banking is vested with the board of directors. Plaintiff here claims that the defendant directors and officers violated Section 24 by failing to manage the bank according to decisions of the entire board of directors. Specifically, the officers and directors have failed to implement the board resolution calling for redemption of the bank's preferred stock.

---

1. Section 51b(a) states in full:

(a) Notwithstanding any other provision of law, whether relating to restriction upon the *payment of dividends upon capital stock or* otherwise, the holders of such preferred stock shall be entitled to receive such cumulative dividends and shall have such voting and conversion rights and such control of management, and such stock shall be subject to retirement in such manner and upon such conditions, as may be provided in the articles of association with the approval of the Comptroller of the Currency. The holders of such preferred stock shall not be held individually responsible as such holders for any debts, contracts, or engagements of such association, and shall not be liable for assessments to restore impairments in the capital of such association as now provided by law with reference to holders of common stock.

The first issue which must be addressed is whether the plaintiff has a right to sue for violations of Section 24. Generally, it has been held that any challenges to the misuse of authority by a bank's board under Section 24 may be made only by the Comptroller of the Currency. *See Thompson v. Saint Nicholas National Bank*, 146 U.S. 240, 13 S.Ct. 66, 36 L.Ed. 956 (1892); *Noel Estate, Inc. v. Commercial Nat'l Bank of Shreveport*, 232 F.2d 483 (5th Cir. 1956); *Winegar v. First Nat'l Bank of Merritt Island*, 267 F.Supp. 79 (M.D.Fla.1967). Some courts, however, have permitted suits under Section 24 by competitors of banks to enjoin a bank from entering new areas of business. *See, e.g., American Society of Travel Agents, Inc. v. Bank of America*, 385 F.Supp. 1084 (N.D.Cal.1974); *see also, New York Stock Exchange v. Bloom*, 562 F.2d 736, 742 (D.C.Cir.1977) (dicta), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1520, 55 L.Ed.2d 538 (1978). None of these cases were decided in the context of the Supreme Court's analysis in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), which established criteria for determining whether a private remedy is implicit in a statute not expressly providing for one. The first of four criteria[2] set out by the Supreme Court requires that the plaintiff be one of the class for whose especial benefit the statute was enacted. Section 24 was enacted to minimize the risk of loss or insolvency to the bank itself. *See Russell v. Continental Illinois Nat. Bank & T. Co. of Chicago, supra; Stein v. Galitz*, 478 F.Supp. 517 (N.D.Ill.1978). I do not believe the plaintiff is of the class of persons, namely bank depositors, which Section 24 was designed to protect. Thus, no Section 24 private right of action may be implied here.

Aside from asserting a direct action under Section 24, plaintiff also argues that a private right of action exists for violations of any of the federal banking laws which result in injury to the plaintiff under Section 93. 12 U.S.C. § 93(a) states in pertinent part:

> If the directors of any national banking association shall knowingly violate . . . any of the provisions of this chapter, all the rights, privileges, and franchises of the association shall be thereby forfeited. Such violation shall, however, be determined and adjudged by a proper district . . . court of the United States in a suit brought for that purpose by the Comptroller of the Currency, in his own name, before the association shall be declared dissolved. And in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation.

Although this section expressly permits federal law suits to be brought only by the Comptroller of the Currency, courts have allowed injured shareholders to bring direct actions in their own behalf against a bank's directors. *Chesbrough v. Woodworth*, 244 U.S. 72, 37 S.Ct. 579, 61 L.Ed. 1000 (1917); *Harmsen v. Smith*, 542 F.2d 496 (9th Cir. 1976). Section 93 has also permitted an injured shareholder to bring a derivative suit on behalf of the bank. *Corsicana National Bank v. Johnson*, 251 U.S. 68, 40 S.Ct. 82, 64 L.Ed. 141 (1919); *Spalitta v. National American Bank of New Orleans*, 444 F.2d 291 (5th Cir.), *cert. denied*, 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 164 (1971); *Seiden v. Butcher*, 443 F.Supp. 384 (S.D.N.Y.1978). I do not believe that any of these cases dictate the absolute availability of a private

---

2. The four criteria in *Cort v. Ash* are:

First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legisla-

tive scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975) (citations omitted).

remedy for any violation of a Chapter 2 section of the National Bank Act. This is especially true in the instant case which essentially involves a breach of fiduciary duty by directors, an area traditionally regulated by state law. *See Stein v. Galitz,* 478 F.Supp. 517, 521 (N.D.Ill.1978); *see also, Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Private cases permitted under Section 93 have involved breaches of specific duties under the Bank Act, for example, the filing of a false quarterly report with the Comptroller of the Currency in violation of 12 U.S.C. § 161(a). *See Chesbrough v. Woodworth, supra; Seiden v. Butcher, supra.* The case at bar simply does not involve the defendants breach of a specific duty under the Bank Act. The complaint merely makes an oblique application of the facts to the general statement in Section 24 that the board of directors have the power to run the bank.

 Even if the plaintiff could challenge the board's failure to act, either directly under Section 24 or via Section 93, the pleaded facts do not substantiate the claim. The National Bank Act does not specify how the board of directors is to govern itself. This is a matter of state law. It is uncontroverted that the vote on the resolution in question by the board was six in favor of redemption, five against and two abstaining. The by-laws of Freedom state:

> Except as otherwise provided herein, a majority of those directors present and voting at any meeting of the Board of Directors, shall decide each matter considered . . . ."

(Silverman Affidavit, Exh. K)

This by-law comports with New York law which provides that "the vote of a majority of the directors present at the time of the vote, if a quorum is present at such time, shall be the act of the board." N.Y. Banking Law § 7008(1); N.Y. Business Corporation Law § 708(d). Thus, the only way to interpret the vote as a passing of the resolution is to say that the voting of so-called "interested" directors should not be counted. No basis for such an interpretation

exists under federal law. Accordingly, based on the facts alleged in the complaint, there is no violation of the federal banking laws.

### 2. *Federal Securities Law*

Plaintiff's purported claim under the federal securities laws rests on the allegation that the defendant directors failed to make full disclosure to the disinterested directors, and to the bank itself, of their interests in obtaining the convertible stock of Freedom from Restoration and the Harlem Council. The defendant Savage Group allegedly contracted to buy the convertible stock in May, 1981 but never disclosed this to the board. This failure to disclose allegedly prohibited Freedom's subsequent redemption of the convertible stock.

 I do not believe this states a claim under Section 10(b). Essentially, plaintiff has stated a claim for breach of fiduciary duty, a purely state law matter. To turn a breach of fiduciary duty into a Section 10(b) violation one must show "manipulative or deceptive" conduct in connection with the purchase or sale of a security. *Sante Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); *see also, Maldonado v. Flynn,* 597 F.2d 789 (2d Cir. 1979); *Goldberg v. Meridor,* 567 F.2d 209 (2d Cir. 1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978). Here, there simply is no requisite securities transaction. There may be a securities transaction between Restoration or Harlem Council and the groups of defendant directors, but neither plaintiff nor the bank was a party to this transaction. Moreover, the transaction, although agreed upon, has never taken place.

 It is arguable that the bank's redemption of convertible stock could be considered a securities transaction. Defendants' failure to disclose to the rest of the board their own efforts to purchase the convertible stock was part of the alleged actions taken to prevent Freedom from redeeming its stock. This claim, however, falls of its own weight. There is no claim here that the uninformed board of directors

failed to make the right decision to redeem. In fact, plaintiff asserts that the board decided to redeem, and this decision should be implemented by order of this court. Had there been full disclosure, the decision of the board would not be any different according to the plaintiff. Thus, it is clear that the actual failure of the management or the board to effect the redemption involves a breach of fiduciary duty and does not constitute activity proscribed by Section 10(b).

In sum, plaintiff's motion for a preliminary injunction against any of the defendants is denied. This case is remanded to the state court because of the failure to state a federal claim.

SO ORDERED.