Leonard CALLAN, et al.

v.

**STATE CHEMICAL MANUFACTURING CO.**

**Civ. A. No. 83–4317.**

United States District Court,
E.D. Pennsylvania.

March 27, 1984.

Neil Epstein, Philadelphia, Pa., for plaintiffs.

C. Oliver Burt, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

In their first cause of action, the plaintiffs seek treble damages for the defendant's alleged violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.* ("RICO"). The defendant has moved to dismiss this cause of action on the grounds that the plaintiffs do not have standing to bring a civil action under RICO and that their alleged injuries are not compensable under RICO. The motion will be granted in part and denied in part.

The allegations of the complaint, which will be accepted as true for the purposes of this motion, may be summarized as follows: The defendant, State Chemical Manufacturing Corporation ("State Chemical"), is in the business of selling cleaners and other products used in building maintenance. The plaintiffs each have extensive experience as salesmen. In 1981, the plaintiffs were persuaded by State Chemical to leave their respective jobs and join State Chemical as sales representatives in the Philadelphia area. Unbeknownst to the plaintiffs at the time they accepted employment with State Chemical, State Chemical marketed its products exclusively through the use of commercial bribery. Specifically, State Chemical required its sales representatives to offer gifts of cash and merchandise to those employees of its customers responsible for purchasing maintenance chemicals. These gifts were made without the knowledge and consent of the customer. The threat of disclosure was used by State Chemical to ensure that those employees who had accepted bribes in the past continued to place their orders with the defendant. The funds to finance the bribery came from the commissions earned by State Chemical's sales representatives.

Each of the plaintiffs refused to offer bribes to maintenance employees. In retaliation for this refusal, they were discharged from their jobs with State Chemical. As a consequence of the defendant's policy of bribery, and their discharge of the plaintiffs, plaintiffs have suffered the following injuries: loss of income used to finance the defendant's bribery; loss of income resulting from their discharge, loss of reputation and standing as salesmen as a result of their discharge; mental anguish and loss of self-esteem.

RICO was enacted in 1970 [1] because Congress felt that organized crime posed a serious threat to the nation's economic well-being, and because it was felt that the then existing tools available to fight this problem were inadequate.[2] Congress responded by passing a statute of great breadth.

The mechanism of RICO can be summarized as follows: Section 1962 makes it illegal for a person to (1) invest the proceeds of a "pattern of racketeering activity" in an "enterprise" that effects interstate commerce, 18 U.S.C. § 1962(a); (2) to acquire or maintain an interest or control in any such "enterprise" through a "pattern of racketeering activity," 18 U.S.C. § 1962(b); (3) to conduct the affairs of an "enterprise" through a "pattern of racketeering activity," 18 U.S.C. § 1962(c); and (4) to conspire to do any of the above acts, 18 U.S.C. § 1962(d).[3]

"Racketeering activity" consists of violation of any one of a long list of federal statutes or specified state crimes punishable by imprisonment for more than one

1. RICO was enacted as Title IX of the Organized Crime Control Act of October 15, 1970, Pub.L. No. 91–452, 84 Stat. 941 (1970).

2. The Congressional Statement of Findings and Purpose reads as follows:

The Congress finds that (1) organized crime in the United States is a highly sophisticated, diversified, and widespread activity that annually drains billions of dollars from America's economy by unlawful conduct and the illegal use of force, fraud, and corruption; (2) organized crime derives a major portion of its power through money obtained from such illegal endeavors as syndicated gambling, loan sharking, the theft and fencing of property, the importation and distribution of narcotics and other dangerous drugs, and other forms of social exploitation; (3) this money and power are increasingly used to infiltrate and corrupt legitimate business and labor unions and to subvert and corrupt our democratic processes; (4) organized crime activities in the United States weaken the stability of the Nation's economic system, harm innocent investors and competing organizations, interfere with free competition, seriously burden interstate and foreign commerce, threaten the domestic security, and undermine the general welfare of the Nation and its citizens; and (5) organized crime continues to grow because of defects in the evidence-gathering process of the law inhibiting the development of the legally admissible evidence necessary to bring criminal and other sanctions or remedies to bear the unlawful activities of those engaged in organized crime and because the sanctions and remedies available to the Government are unnecessarily limited in scope and impact.

It is the purpose of this Act to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime. Section 1 of Pub.L. 91–452.

3. The full text of 18 U.S.C. § 1962 follows:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity of the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

**622**

year. 18 U.S.C. § 1961(1). A "pattern of racketeering activity" is defined as the commission of at least two acts of racketeering activity within a ten year period. 18 U.S.C. § 1961(5). Finally, an "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

RICO provides a selection of sanctions for violation of section 1962. It permits the government to seek both criminal and civil sanctions and, most significantly for our purposes, section 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

■ The defendant first asserts that the plaintiffs have no standing to bring a claim pursuant to § 1964(c).[4] It asserts that the plaintiffs are not within the class of persons on whose behalf RICO's civil damages were intended. In essence, the defendant urges an interpretation of § 1964(c) that limits access to treble damages under RICO to those who have suffered some sort of "competitive" injury. More specifically, the defendant argues that civil RICO is limited to the owners, customers, or competitors of business infiltrated by organized crime. This position is not without judicial support. *See, e.g., Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449 (7th Cir.1982); *Alexander Grant & Co. v. Tiffany Industries, Inc.,* 563 F.Supp. 35 (E.D.

Mo.1982); *Earlbaum v. Earlbaum,* 1982 Fed.Sec.L.Rep. (CCH) ¶ 98,772 (E.D.Pa. 1982), *appeal dismissed,* 709 F.2d 1491 (3d Cir.1983); *Van Schaick v. Church of Scientology of California, Inc.,* 535 F.Supp. 1125 (D.Mass.1982). I am not, however, persuaded that this is the correct view. The language of section 1964 is unambiguous. Consequently it is not appropriate for this court to redraft that language and restrict its effect. Although courts may be concerned that the statute cuts too broad a swath, it lies with Congress to narrow its scope. *See Bennett v. Berg,* 685 F.2d 1053 (8th Cir.1982); *Kimmel v. Peterson,* 565 F.Supp. 476 (E.D.Pa. 1983); *Note, Civil RICO: The Temptation and Impropriety of Judicial Restrictions,* 95 Harv.L.Rev. 1101 (1982).[5]

■ Section 904(a) of RICO provides that the act "shall be liberally construed to effectuate its remedial purposes." The stated purpose of the act is "the eradication of organized crime." Thus, the treble damage remedy is designed more as a tool to be used against those violating section 1962 than as a remedy for those injured. It seems to me, therefore, that approaching standing under RICO from the point of view of those intended to be protected by the statute fundamentally misconceives the statute's purpose. The statute was conceived not as a shield for those injured, but rather as a sword to be used against organized crime. For that reason, prohibiting the plaintiffs from pursuing their RICO claims because they do not fit into that class of plaintiffs that may be said to have suffered a "competitive injury," would not

**4.** The defendant does not contend that the acts alleged in the complaint would not, if proved, constitute a violation of § 1962. Commercial bribery is illegal in Pennsylvania, 18 Cons.Pa. Stat.Ann. § 4108, and is punishable by up to two years imprisonment. 18 Pa.Const.Stat.Ann. § 106. Thus two acts of commercial bribery within a ten year period would constitute a "pattern of racketeering activity." State Chemical is clearly an "enterprise" under § 1961(4) and it is undisputed that it engages in activities affecting interstate commerce. Thus, the investment of funds derived from commercial bribery in State Chemical, the operation of State Chemi-

cal through the use of commercial bribery, and any conspiracy to do the above acts would violate § 1962.

**5.** In *Kimmel* my colleague, Judge Giles, has thoroughly addressed the arguments that have been advanced to support a narrow construction of § 1964(c). There is no reason for me to repeat the counter arguments that Judge Giles has so ably and so recently outlined. Accordingly, I simply adopt the reasoning contained in section 3 of Judge Giles' opinion in *Kimmel.*

seem in any way to promote RICO's remedial purposes.

■ The defendant next contends that the plaintiffs alleged injuries cannot be said to have been caused "by reason of" the defendant's alleged violations of § 1962. *See* 18 U.S.C. § 1964(c). I disagree. The plaintiffs contend that they lost income and were discharged as a result of the fact that the affairs of State Chemical were conducted through a pattern of racketeering activity. This is sufficient under § 1964. This is not a case such as that before Judge Cahn in *Earlbaum, supra*. In that case, Judge Cahn found that the plaintiff had not alleged an injury under RICO because she only alleged injuries stemming from the predicate offenses, and not from the relationship between those offenses and the enterprise. In this case, the predicate offense, commercial bribery, did not in and of itself harm the plaintiffs. What allegedly injured the plaintiffs was the fact that State Chemical adopted commercial bribery as a mandatory sales technique. Thus I believe that plaintiffs have clearly alleged an injury "by reason of" a violation of § 1962.

■ The defendant next contends that the plaintiffs may not seek treble damages for mental anguish, loss of confidence and self-esteem, and harm to their business reputations and standing in their occupations. I agree. Section 1964 is clearly limited to those who have suffered injury to their "business or property." A natural implication of this language is that treble damages are recoverable only for injuries to business and property. In this case, I believe that the income allegedly lost because it was used by State Chemical to finance commercial bribery and the income allegedly lost due to plaintiffs' discharge from State Chemical are recoverable under RICO. I do not believe that the alleged mental anguish, loss of self-esteem and confidence, or damaged reputations are recoverable under RICO. While it may be true that successful professional salesman require self-confidence and a good reputation, I do not believe these can be con-

sidered businesses or property. Consequently their loss is not cognizable under RICO.

■ Finally, on the authority of *Landmark Savings & Loan v. Rhoades*, 527 F.Supp. 206 (E.D.Mich.1982) (rejecting RICO action based on a conspiracy between a corporation and its agents), defendant asserts that ¶ 53(c) of the complaint, which alleges a conspiracy to violate § 1962, is deficient insofar as it alleges a conspiracy between State Chemical and its agents or employees. I decline to adopt the reasoning of *Landmark Savings*, and believe that the better view is expressed in *Mauriber v. Shearson/American Express, Inc.*, 567 F.Supp. 1231 (S.D.N.Y.1983) (permitting RICO action based on conspiracy between brokerage and one of its brokers). Furthermore, I note that the plaintiff alleges that the defendant conspired with its "employees, agents *and others*" [emphasis added]. Thus plaintiff has adequately alleged a conspiracy under § 1962(d). For the foregoing reasons the defendant's motion will be denied, except insofar as it seeks dismissal of plaintiffs' claims for treble damages resulting from mental anguish, loss of confidence and self-esteem, and loss of reputation and standing in their profession.