**Robert L. Randolph CULLOM**

v.

**HIBERNIA NATIONAL BANK OF NEW ORLEANS, LOUISIANA and Hibernia National Bank in Lafayette (formerly Southwest National Bank of Lafayette).**

Civ. A. No. 87–1996.

United States District Court,
E.D. Louisiana.

Aug. 5, 1987.

Butler, Heebe, Richard & Hirsch, Peter J. Butler, New Orleans, La., for plaintiff.

Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, William Forrester, New Orleans, La., Arnold & Porter, Scott Schrieber, Washington, D.C., for defendants.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is defendants' motion to dismiss the complaint for lack of standing, or, alternatively, because plaintiff has failed to state a claim upon which relief can be granted. Plaintiff sues under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*[1]

The standing motion focuses on a question which has received little judicial attention thus far; one which implicates RICO's breadth.

Robert L. Cullom is the former President and Chief Executive Officer of Southwest National Bank, which now operates as the Hibernia National Bank of Lafayette. In August 1985, Southwest Bancshares, Inc., owner of all of the outstanding stock of SNB, and Hibernia Corporation, the parent of Hibernia National Bank, entered into an agreement and plan of merger under which Hibernia would acquire all outstanding stock of SNB. The merger was effected on September 1, 1986. Subject to certain limitations, Southwest shareholders could elect to receive either cash or Hibernia common stock in exchange for their Southwest shares. After the merger discussions, in March 1986, the Hibernia Bank proposed that SNB purchase a $1 million participation in each of ten different loans then owned by Hibernia. The proposal is claimed to have been part of a scheme pursuant to which Hibernia would sell $115 million in loan participations to SNB and certain other banks. By letter, Hibernia advised SNB that the participations would be sold immediately prior to the close of the quarter ending March 31, 1986 and that identical participations would be repurchased by Hibernia at the beginning of the second quarter of 1986.

When informed of the alleged temporary purchase of loan participations, plaintiff became concerned that the arrangement constituted a deliberate misrepresentation of the financial condition of the outstanding loans of the Hibernia Bank in violation of banking regulations. In late March, he expressed his opposition to the plan. Thereafter, on April 10, 1986 he was re-elected President and Chief Executive Officer of SNB. But, he alleges, on April 30, 1986, his resignation was demanded for the purported reason that his mortgage loan with SNB was in default. Plaintiff claims, however, that SNB conceded that the real reason for his termination was his refusal to participate in the plan to purchase Hibernia's loan participations. He sues under 18 U.S.C. § 1964(c) for monetary damages incurred by virtue of his loss of employment. He lacks standing to do so.

Section 1964(c) of RICO provides a civil remedy to "[a]ny person injured in his business or property by reason of a violation of

---

1. As to the Hibernia National Bank, defendant asserts alternatively that the RICO claim is deficient because of a failure to allege a "pattern of racketeering activity", and because of a failure to allege a "person" separate and distinct from the "enterprise". As to the Southwest National Bank of Lafayette, it is contended that the plaintiff failed to allege the requisite nexus between SNB, the enterprise, and the pattern of racketeering activity. Because of the Court's ruling on standing, it is unnecessary to reach the other issues.

section 1962." 18 U.S.C. § 1964(c). Plaintiff alleges violations of subsections (c) and (d) of Section 1962. Subsection (c) prohibits persons associated with an enterprise involved in interstate commerce from conducting the affairs of the enterprise through a "pattern of racketeering activity". *Id.* § 1962(c). Subsection (d) makes conspiracy to violate Section 1962 unlawful. Plaintiff alleges various instances of mail and securities fraud as examples of specific racketeering activities. *See id.* § 1961(1).

■ The Supreme Court requires a close nexus between RICO conduct and damages to support a civil RICO suit. Plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." The racketeering activities must injure the plaintiff in his business or property. *Sedima, S.P.R.L. v. Imrex Company,* 473 U.S. 479, 105 S.Ct. 3275, 3285–86, 87 L.Ed.2d 346 (1985). Under Section 1964(c), "the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise." *Id.* 105 S.Ct. at 3286. In this case, the "conduct constituting the violation" consists of the predicate acts of mail fraud and securities fraud. To have standing, plaintiff's damages must "flow from the commission of the predicate acts." *Id.* Thus, the question: does one whose employment is terminated for refusal to participate in RICO-prohibited acts have standing to seek civil RICO damages?

■ This Court finds that plaintiff lacks standing to assert a RICO claim because his injury was not suffered "by reason of" the alleged acts of mail and securities fraud. 18 U.S.C. § 1964(c). Indeed, plaintiff's damages, if any, stem from his discharge from SNB, by virtue of his own allegations. Plaintiff's assertions would convert a suit for wrongful employment termination into the treble damage club of a civil RICO suit. His allegations might be correct; the termination of his employment might have been without cause. But that termination certainly does not constitute a Section 1962 violation. Thus, plaintiff's injury to his business or property cannot be said to flow from a RICO violation and plaintiff cannot avail himself of Section 1964(c). This Court finds the unreported decision in *Diamond v. Reynolds,* No. 84–280 MMS, slip op. at 6 (D.Del. July 15, 1986) [Available on WESTLAW, DCT database] to be a helpful guide. The plaintiff in *Reynolds,* like the plaintiff in this case, urged that he was discharged because he "actively opposed [his employer's] ... alleged racketeering activities." Slip op. at 5. As in *Reynolds,* SNB's "discharge of plaintiff [is] ... completely severable from any racketeering acts defendants allegedly committed. The discharge of plaintiff may have assisted defendants' alleged scheme as the district court noted in *Reynolds,* "but the discharge in itself is not conduct constituting a violation of RICO."[2] Two other recent decisions are of equal interest.

The First Circuit recently equated standing and causation under 18 U.S.C. § 1964(c). *Nodine v. Textron, Inc.,* 819 F.2d 347 (1 Cir.1987). "The Supreme Court", said the court, "has framed the causation requirement as one of standing." At 348. Thus, a private person asserting a RICO claim " 'has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.' " *Id.* (quoting *Sedima,* 105 S.Ct. at 3285–86). The First Circuit held that Nodine, an employee discharged for reporting his employer's criminal violations, lacked standing to sue his employer under RICO. The court said plaintiff's "injury resulted from Textron's decision to fire him after he reported the ... scheme to his superiors. Firing Nodine under these circumstances was wrong, but it did not violate the RICO Act." *Id.* Therefore, the court held No-

---

**2.** Plaintiff relies on *Callan v. State Chemical Manufacturing Co.,* 584 F.Supp. 619 (E.D.Pa. 1984). However, *Callan* was decided before the Supreme Court's consideration of the standing requirement in Section 1964(c) cases in *Sedima.* Like the *Reynolds* court, this Court does not find *Callan* dispositive or persuasive.

dine was not " 'injured in his business or property by the conduct constituting the violation.' " *Id.* (quoting *Sedima,* 105 S.Ct. at 3286.) In *Kouvakas v. Inland Steel Company,* 646 F.Supp. 474 (N.D.Ind.1986), an employee suffered abuse and harrassment leading to loss of employment when he refused to participate in his employer's fraudulent schemes. The court found that the plaintiff lacked standing to maintain a civil RICO action against his employer because plaintiff was not injured "by reason of" a pattern of racketeering. The direct wrong (abuse and harrassment) which caused the injury to plaintiff's business or property did not constitute racketeering activity under the RICO statute:

> "Kouvakas' damages from loss of employment derive from the personal injury he suffered by reason of the defendants' alleged abuse and harrassment. This 'abuse and harrassment' does not constitute 'racketeering activity' under 18 U.S.C. § 1961(1) ... [P]laintiffs have not shown any business or property damages that 'flow from the commission of the predicate acts'. They have merely alleged personal injuries that ultimately resulted in ... loss of employment." p. 477

■ RICO does not shield every injury, nor does it insure against every wrong that can be traced to a predicate act. As the Supreme Court has explained, a defendant who violates Section 1962 " 'is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured.' " *Sedima,* 105 S.Ct. at 3286 (quoting *Haroco, Inc. v. American National Bank & Trust Company of Chicago,* 747 F.2d 384, 398 (7 Cir.1984) *affirmed* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985)). Plaintiff might have a claim for wrongful termination of his employment. He might well have been damaged. But he does not have the standing to assert a claim for damages for racketeering conduct.[3]

Accordingly, for the foregoing reasons,

IT IS ORDERED:

Defendants' motion to dismiss for lack of standing is GRANTED, and plaintiff's complaint is DISMISSED with prejudice, plaintiff to bear all costs.

---

**3.** This Court's ruling is also entirely consistent with the legislative purpose of the RICO statute. "RICO was an aggressive initiative to supplement old remedies and develop new methods for fighting crime." *Sedima,* 105 S.Ct. at 3286. Although "few of the legislative statements about novel remedies and attacking crime on all fronts ... were made with direct reference to § 1964(c), it is in this spirit that all of the Act's provisions should be read." *Id.* RICO was designed to be " 'a major new tool in extirpating the baneful influence of organized crime in our economic life,' " not as a means of redressing harm from wrongful discharge. 105 S.Ct. at 3281 (citing 116 Cong.Rec. 25190 (1970) (statement of Sen. McClellan)). This Court is not unmindful of *Sedima* 's admonition that the RICO statute should not be narrowly construed. See *Sedima* at 3286. But to stretch the standing requirement of the statute beyond its plain words and meaning would extend RICO beyond the outer limits of reason. Although the statute's legislative history seems not to square with the apparent broader thrust of the provisions of the statute itself, courts should not invoke a loose standing requirement which goes farther than the language of the statute.