[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 29, 2001
THOMAS K. KAHN
CLERK

No. 97-8597

D. C. Docket No. 96-00028-CV-1

JOHN B. O'NEAL., III,

Plaintiff-Appellant,

versus

JEANETTE G. GARRISON; WAYNE C. PELOQUIN;
et al.,

Defendants- Appellees.

Appeal from the United States District Court for the
Southern District of Georgia

(August 29, 2001)

Before BARKETT, GODBOLD and GOODWIN*, Circuit Judges.

_____
*Honorable Alfred T. Goodwin, U.S. Circuit Judge for the Ninth Circuit, sitting by
designation.

GODBOLD, Circuit Judge:

This is a whistleblower suit brought by a corporate officer who was discharged and then sued his employer and individuals whom he alleges contributed to his termination.

Background

Plaintiff John D. O'Neal was employed by Master Health Plan, Inc. (MHP) as vice-president. The parties agree that he was an at-will employee. MHP was wholly owned by Healthmaster, Inc. The defendant Jeanette G. Garrison was president of both companies and controlled both. She owned fifty percent of the stock of Healthmaster and her husband owned the remaining fifty percent.

In 1994 the United States government began a criminal investigation of affairs of the two corporations and of Garrison. Plaintiff was not a target. He agreed to cooperate with the government, gave substantial assistance, testified before a grand jury, and agreed to testify at trial. Garrison learned of O'Neal's cooperation.

The grand jury returned an indictment against Garrison, Healthmaster, and others on March 8, 1995. On March 12, Peter Molloy, in-house counsel for Healthmaster, accompanied by armed security guards, intercepted plaintiff at his office and told him that he had been placed on administrative leave. O'Neal was

2

allowed to remove personal effects and told not to return to the office. The next day large quantities of documents in O'Neal's office were shredded by employees. O'Neal has not returned to MHP.

On March 13 Garrison and her husband, the only directors of MHP, held a meeting at which, they contend, they removed O'Neal as president. The next day a letter signed by Garrison was delivered to plaintiff notifying him that he had been placed on administrative leave with pay.

In succeeding weeks there was communication between plaintiff and Garrison and the attorney for MHP, the exact dates and sequence of which are disputed. Garrison encountered O'Neal at church and asked him whether he was ready to come back to work. In May the attorney for MHP met with O'Neal. Later O'Neal met with Garrison and the attorney. One meeting was at O'Neal's home. According to O'Neal, at these meetings express or implied proposals were made to reinstate him if he would change his testimony. According to Garrison and MHP's attorney, they were only communicating to O'Neal that he should come back to work because the company needed him.

Shortly before July 2 Garrison hired G. Wayne Peloquin as new president and CEO of MHP. He reported for work on July 2. On July 7 he terminated O'Neal by signing a letter and sending it to him.

3

On July 26 Garrison pleaded guilty to a conspiracy to defraud Medicare and nine counts of false statements. Restitution was made to the government of some $11,000,000. Garrison was sentenced to a prison term, agreed to sell the assets of Healthmaster, and was excluded from participation in the Medicare program for ten years.

O'Neal filed this suit in February 1996. The Second Amended Complaint alleges eight counts, variously distributed among these defendants: Garrison; her son Christopher; Healthmaster; Master Health Plan, Inc.; Peloquin; Molloy; and Kelly, an employee.[1] The counts are:

Count I: Conspiracy in violation of 42 U.S.C. § 1985(2): against Garrison, her son Christopher, Peloquin, Healthmaster, Kelly, Molloy, and MHP.

Count II: Violation of the Federal False Claims Act, 31 U.S.C. § 3730(h): against MHP.

Count III: Violation of the Georgia RICO Act, Ga. Code Ann. § 16-14-1 et. seq.: against Garrison, Molloy, and Healthmaster.

Count IV: Defamation: against Garrison, Kelly, Molloy, and Healthmaster.

Count V: State law claim for tortious interference with employment: against

---

[1]Kelly's name appears in some subsequent pleadings. Ultimately the case against him was dismissed.

4

Garrison, Kelly, Molloy, Peloquin and Healthmaster.

Count VI: Fraudulent conveyance of assets by Garrison: against Garrison, Healthmaster, and Christopher Garrison, Trustee.

Count VII: Contract claim for vacation pay and benefits: against MHP.

Count VIII: Breach of contract for services: against Garrison.

## Count I

## § 1985(2) Conspiracy

This count alleges conspiracy in violation of 42 U.S.C. § 1985(2), against Garrison, her son Christopher, Peloquin, Healthmaster, Kelly, Molloy, and MHP.

Section 1985(2) provides:

### Conspiracy to interfere with civil rights

(2) Obstructing justice; intimidating party, witness or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding,

5

> hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

The district court granted summary judgment on this count to all defendants.

Central to this case are Morast v. Lance, 631 F. Supp. 474 (N.D. Ga. 1986), aff'd., 807 F.2d 926 (11th Cir. 1987), and Haddle v. Garrison, 525 U.S. 121, 119 S. Ct. 489, (1998). In Morast a bank officer sued under § 1985(2) alleging that the defendants conspired to deter him from testifying as a witness in a proceeding before the Comptroller of the Currency concerning an illegal banking transaction and that he was fired in retaliation for his participation in the Comptroller's investigation. Morast, 631 F. Supp. at 477-78. The district court held that as an at-will employee Morast had no constitutionally cognizable interest in his job, therefore his loss of employment did not state a claim under § 1985(2). Id. at 79. On appeal this court affirmed, reiterating that because Morast was an at-will employee he had no constitutionally protected interest in continued employment, therefore, his discharge was not an actual injury. Morast, 807 F.2d at 930.

Michael A. Haddle sued in the same district court as O'Neal, alleging a § 1985(2) conspiracy. Haddle, 525 U.S. at 123. Haddle's case and O'Neal's case arose out of the same series of events. Haddle was an at-will employee of

6

Healthmaster.  Id.  He was terminated and then filed a suit alleging a § 1985(2)

conspiracy and state claims as well.  Id.  He alleged a conspiracy by Garrison and

others to have him fired from his job in retaliation for cooperating with a grand

jury subpoena issued in the Garrison investigation and to deter him from testifying

at a federal criminal trial of Garrison.  Id.

According to Haddle's complaint he cooperated with federal agents in the

investigation of Garrison and others and appeared  before the grand jury pursuant

to a subpoena, although he did not testify because of the "press of time."  Id.  He

was, however, expected to appear as a witness in the criminal trial resulting from

the indictment.  Id.  He stated two grounds for relief under §1985(2), conspiracy to

deter him from testifying in the upcoming criminal trial and conspiracy to retaliate

against him for attending the grand jury proceeding.  Id.  And he alleged that he

had been injured in his personal property by the acts of the defendants.  Id.

The district court dismissed the complaint on a Federal Rule of Civil

Procedure Rule 12(b)(6) motion on the ground that Morast required it to do so.  Id.

The Eleventh Circuit affirmed without published opinion.  Haddle v. Garrison, 132

F.3d 46 (11th Cir. 1997).  On appeal the Supreme Court reversed on the ground

that Morast, on which the district court and court of appeals had relied, had been

wrongly decided.  Haddle, 525 U.S. at 125-26.  The Court held that the nature of

the wrong at which § 1985(2) is directed is essentially third-party interference with at-will employment. Id. at 126. It held that the Eleventh Circuit's conclusion that petitioner must state an injury to a "constitutionally cognizable property interest" was incorrect and that the gist of the wrong at which § 1985(2) is directed is not deprivation of property but intimidation or retaliation against witnesses in federal court proceedings. Id. at 125. The Court pointed out that protection against third-party interference with employment is also protected under state law, including the law of Georgia.[2] Id. at 127. The Supreme Court's decision in Haddle requires that the judgments on Count I must be reversed, and they are REVERSED and REMANDED.

## Count II

## False Claims Act

Plaintiff claimed a violation by MHP of the False Claims Act, 31 U.S.C. § 3730(h), arising out of his suspension and firing in retaliation for his assistance to the government. This Act authorizes suit by a private person who has been discriminated against in his employment because of lawful acts done by the

---

[2]On remand of Haddle the § 1985(2) claim was tried before a jury, which returned a verdict for the plaintiff on that claim and awarded damages. On appeal the Eleventh Circuit affirmed without published opinion. Haddle v. Garrison, 253 F.3d 709 (11th Cir. 2001). The state law claims were previously dismissed without prejudice by the district court on June 25, 1996, and neither party sought review of that order.

8

employee in furtherance of an action brought under § 3730. 31 U.S.C. § 3730(b). On this count a jury returned a verdict in favor of O'Neal and against MHP, and judgment was entered in favor of O'Neal. The court denied MHP's motion for judgment as a matter of law. This count is the subject of a separate appeal.

## Count III

## Georgia RICO

Plaintiff's RICO claim is asserted against Garrison, Molloy and Healthmaster under the Georgia statute, O.C.G.A. § 16-14-1 et. seq. The Georgia statute is essentially the same as the federal RICO statute. See Morast, 807 F.2d at 933.

The district court granted summary judgments to all defendants on the RICO claim on the ground that, as provided by Morast, the predicate acts relied upon - placing O'Neal on administrative leave and subsequently firing him - were lawful acts. Haddle requires that the summary judgment must be REVERSED and REMANDED. Remand would be futile, however, if plaintiff has not stated a RICO cause of action. We hold that he has.

The Georgia Code sets out prohibited activities:

> (a)    It is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any

9

> enterprise, real property, or personal property of
> any nature, including money.

> (b)     It is unlawful for any person employed by or
>         associated with any enterprise to conduct or
>         participate in, directly or indirectly, such enterprise
>         through a pattern of racketeering activity.

> (c)     It is unlawful for any person to conspire or
>         endeavor to violate any of the provisions of
>         subsection (a) or (b) of this Code section.

O.C.G.A. § 16-14-4.

We look to section 16-14-3 for the allegations that must be set out to state a cause of action for violation of section 16-14-4. See O.C.G.A. § 16-14-3. The defendant must engage in "racketeering activity." See § 16-14-3(9)(A). Racketeering activity means to commit, attempt to commit, to solicit, coerce, or intimidate another person to commit any crime that is chargeable by indictment under prescribed laws of Georgia. See id. The prescribed laws are listed in (9)(A) and (9)(B). See § 16-14-3.

The racketeering activity alleged in this case is obstruction of justice. Obstruction of justice appears in section 16-14-3(9)(B). Subsection (9)(B)(xxix) sweeps into the Georgia list conduct defined as racketeering activity under 18 U.S.C. § 1961, which also includes obstruction of justice.

RICO requires a pattern of racketeering activity, which consists of at least

10

two incidents of racketeering activity ("predicate acts") that have same intent, results, methods of commission or otherwise are interrelated and not isolated. See § 16-14-3(8). The incidents of racketeering alleged in this case as constituting a pattern are plaintiff's being placed on administrative leave, the termination of his employment, and the similar and interrelated termination of Michael A. Haddle. Plaintiff alleges that these incidents occurred not to further any business interest of the defendants but to protect them from criminal prosecution. Plaintiff complains that the defendants acted to deter O'Neal and Haddle from freely giving truthful testimony before the court or to injure them because they did so testify.

To recover under civil RICO plaintiff must allege that he suffered injury as a proximate result of the predicate acts. O'Neal alleged injury, consisting of the loss of work and status by being placed on administrative leave, the loss of his job and the benefits accruing from it, and the injury to him in his profession by being terminated.

Plaintiff has adequately touched the bases. I am doubtful that a plaintiff must include in his allegations the provisions of section 16-14-4(a), (b), and (c), ". . . to acquire or maintain . . ." and ". . . to conduct or endeavor . . . ." In any event O'Neal alleged these provisions.

The judgments on Count III are REVERSED and REMANDED.

11

Count IV

Defamation

O'Neal's defamation claim is not involved in this appeal.

Count V

Tortious Interference With Plaintiff's Employment

With respect to the claim against Peloquin, summary judgment granted to him on this count was erroneous. The court, in its order of February 25, 1997, pages 8 and 15, stated that it had determined that Peloquin, as president and CEO of MHP, had the authority to terminate O'Neal. The grounds for these findings were not stated and we are not able to determine the factual basis for them.

In June 1991, May 1993, and on July 28, 1994, O'Neal was elected by the Board of Directors as vice-president, for a one-year term and thereafter until his successor was elected and qualified.

Under Georgia law the board of directors may remove a corporate officer for cause. See McCreery v. RSA Mgmt., Inc., 287 S.E.2d 203, 205 (Ga. 1982); Ga. Code Ann. § 14-2-843. Fletcher Cyc. of Corps., § 357 states:

> The removal [of a corporate officer] must ordinarily be by the body or officer authorized to elect or appoint . . . .
>
> . . . Where the power to remove an officer is vested in the directors, action by them is necessary to constitute a removal . . . .

12

> . . . Absent express authority, the president of a corporation has no power to remove an officer appointed by the board of directors where the power of removal is in the board . . . .

The parties have not referred us to any Georgia law recognizing implied power of a corporate president to discharge another officer. The district court held that there was no evidence that the corporate charter or policies of MHP forbade the president to discharge an officer, but that conclusion does not establish that the president possessed the authority that Peloquin asserts.

Garrison testified that at the time O'Neal was discharged she had ceded all authority over the company to Peloquin. She stated that she resigned as president and that Peloquin refused to accept the position until he was given a free hand. Whether she could "cede" authority that she possessed, what that authority embraced, when and how the "cession" was made and when it was effective are not revealed. Minutes of board meetings were produced, but there appear to be none referring to Peloquin's being appointed as president until after O'Neal was fired.

Under Georgia law an at-will employee has no cause of action against his employer for wrongful discharge, regardless of its motive. Runyan v. Econ. Lab., Inc., 248 S.E.2d 44, 46 (Ga.Ct.App. 1978). However, a manager who has no authority to discharge an at-will employee can be a third person tortfeasor for

13

wrongfully procuring the employee's discharge. See Georgia Power v. Busbin, 250 S.E.2d 442, 444 (Ga. 1978); Campbell v. Carroll, 174 S.E.2d 375, 377-78 (Ga. 1970). The record does not reveal that Peloquin had the power to discharge. The summary judgment in favor of Peloquin is REVERSED and REMANDED.

With regard to the claim against Garrison, summary judgment granted to her on this count is not erroneous. Garrison was angry with O'Neal, she made threats to crush employees who testified against her, and she employed Peloquin who soon thereafter fired O'Neal. But Peloquin and Garrison testified that Peloquin had no discussion with Garrison about terminating O'Neal and that he alone made the decision because O'Neal was on the payroll but performing no duties. On the summary judgment record before the district court at the time it ruled, we cannot say that the district court erred with respect to Garrison's role in the discharge of O'Neal. It is not disputed that Garrison placed O'Neal on administrative leave, and it is not seriously questioned that she had the authority to do so. The judgment on this count with respect to Garrison is AFFIRMED.

The district court granted summary judgment to Molloy. It held that Molloy participated in plaintiff's discharge only by delivering the discharge letter to him, that he was only acting as a messenger, and that this was insufficient to show tortious interference. The summary judgment to Molloy is AFFIRMED, and

14

the summary judgment to Healthmaster is also AFFIRMED since its responsibility is derivative of actions of its employee Molloy.

## Count VI

## Fraudulent Transfer of Assets

The jury returned a verdict for Garrison on the Count VIII claim for breach of contract. The court held in its order of July 2, 1997, footnote 3, that when the verdict was returned on O'Neal's contract claim, the question of whether Garrison fraudulently transferred assets became moot because the fraudulent transfer action could be brought only by a creditor and Garrison was not a creditor. Plaintiff contends that the fraudulent transfer claim must be reinstated if it is determined that Garrison is indebted on any claim other than Count VIII because she then will have become a creditor. It may be that the status of Garrison as a creditor is not limited to obligations alleged in Count VIII. However, plaintiff's notice of appeal did not list as an issue the dismissal of the Count VI fraudulent conveyance claim, therefore plaintiff's claim for possible reinstatement is not before us.

## Count VII

## Contract for Vacation Pay and Benefits

Plaintiff claims a contract for vacation pay and benefits provided under state law against MHP. A jury returned a verdict in O'Neal's favor. This count is

the subject of a separate appeal.

## Count VIII

## Breach of Contract Claim

O'Neal alleges that Garrison failed to comply with a promise to give plaintiff a twenty percent interest in MHP as compensation for his services to that company. This count was tried to a jury, and the jury returned a verdict for Garrison. At trial plaintiff requested in writing that the court instruct the jury on promissory estoppel. The court refused on the ground that promissory estoppel had never been an issue in the case and was not referred to in the pretrial order. It had not been pleaded, and plaintiff did not ask leave to amend. Plaintiff urged that the court's pretrial order form allowed only a single page to set out in narrative form the plaintiff's claims and that he did not have enough room to include everything. Also, plaintiff's counsel did not list in the pre-trial order the Georgia promissory estoppel statute. And counsel was required to submit suggested findings and interrogatories for the jury but did not include promissory estoppel. The court did not err in denying the request to instruct on promissory estoppel. The judgment on Count VIII is AFFIRMED.

## Summary

For ease in understanding we have provided for reversal or remand on each

16

count where relevant.  All other claims are affirmed or are not raised in this

appeal.